# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| NORTHBANK CIVIL & MARINE, LLC, <br><br> Plaintiff, <br><br><br> vs. <br><br> ED BOLAND CONSTRUCTION, INC, <br><br> Defendant. | CV-15-38-GF-BMM <br><br><br><br><br><br> **ORDER** |

## I.  FACTUAL BACKGROUND

This case arises from a contract dispute between general contractor, Northbank Civil and Marine, LLC ("Northbank"), and subcontractor, Ed Boland Construction ("EBC"). Northbank entered into a contract with the U.S. Department of Transportation Federal Highway Administration ("FHA") to perform construction activities on the Swiftcurrent Creek Spillway Bridge Reconstruction Project in Glacier National Park, Montana (the "Project"). (Doc. 1 at 2-3, 5-6.)

EBC entered into a subcontract with Northbank on September 10, 2014 (the "Subcontract"), to perform drilling and steel pipe placement services for the Project. (Docs. 25 at 5; 36 at 7.)

EBC agreed to drill ten holes and install concrete pilings in each hole. (Docs. 25 at 2; 36 at 2.) EBC began work on the Project at the end of September, 2014. (Docs. 25 at 8; 36 at 15.) EBC notified Northbank on October 2, 2014, that it had encountered "unforeseen conditions." *Id.* The FHA refused to make any changes to the Project specifications, contracts, or payment terms. (Docs. 25 at 9; 36 at 17.)

Northbank issued a three-day notice to cure to EBC on October 7, 2014. (Doc. 25 at 11.) Northbank then issued EBC a letter of default on October 14, 2014. *Id.* EBC claims that it completed four of the ten holes under the subcontract at the time of default. (Docs. 25 at 11; 36 at 20.) EBC admits that at least one of those holes may have needed to be corrected. *Id.*

## II. PROCEDURAL BACKGROUND

Plaintiff Northbank filed a Complaint alleging that Defendant EBC had breached the Subcontract, had been negligent, and negligently had misrepresented its abilities to perform. (Doc. 1 at 6-8.) Northbank alleges damages in excess of $250,000 incurred to hire another contractor to complete the Project. *Id.* at 7.

EBC filed an Amended Answer and Counterclaim against Northbank. (Doc. 6.) EBC alleges breach of contract, negligent misrepresentation, negligence, fraud,

*quantum meruit*, statutory right to payment, prejudgment interest, and breach of covenant of good faith and fair dealing. (Docs. 6 at 9-12; 21 at 15.) EBC alleges that Northbank "coaxed" EBC along, even though Northbank knew that EBC's drilling method was not compliant with FHA's contract specifications. (Doc. 6 at 8.) EBC also alleges that it encountered differing site conditions at the project and that Northbank wrongfully refused its request to modify the Subcontract. *Id.* EBC alleges that Northbank wrongfully terminated the Subcontract and has failed to pay EBC any of the $55,942.22 that it expended on the Project. *Id.*

Both parties filed motions for partial summary judgment. (Docs. 24; 31.) Northbank also made five motions *in limine* to exclude certain evidence and allegations during trial, and to limit potential recovery by EBC. (Doc. 27.) The Court held a hearing on all of the motions on September 21, 2016. (Doc. 47.)

Northbank moved the Court for summary judgment on several of EBC's defenses and counterclaims: (1) negligence of unnamed, joint tortfeasors; (2) a *quantum meruit* counterclaim; (3) a statutory right to payment counterclaim; (4) defenses based on the terms of the contract; (5) and a waiver defense and negligent misrepresentation and fraud counterclaims. (Doc. 26 at 9.)

EBC moved the Court for two summary judgment orders: (1) a ruling that Northbank breached the Subcontract by failing to pay EBC for mobilization, tooling, and drilling work; and (2) a ruling that Northbank has been enriched

3

unjustly by obtaining drilling services from EBC without paying for the services. (Doc. 31 at 1-2.)

Northbank moved the Court for orders *in limine*: (1) excluding evidence that Northbank allowed EBC on site without an approved drilling submittal; (2) excluding any allegations or evidence that Northbank had or breached a duty to pursue a changed circumstances or differing site conditions request with the FHA; (3) excluding any allegations that Northbank had or breached a duty to amend its contract with EBC to a time and materials basis; (4) excluding evidence that Northbank did not fit steel pipe piles with a cutting or drive shoe for use with EBC's rock auger drilling system; and (5) limiting EBC's damages for breach of contract, if any, to the $28,795 amended contract price for work performed. (Doc. 27 at 1-2.)

### III.  STANDARD OF REVIEW

This Court applies state substantive law and federal procedural rules for claims over which it exercises diversity jurisdiction. *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015). The Court exercises diversity jurisdiction over all of the claims and counterclaims in this case. Federal law governs the procedural aspects of the parties' summary judgment motions and Plaintiff's motions *in limine*. *Id.* Montana law controls the substantive issues. *Id*.

#### A. Summary Judgment

The Court grants summary judgment where a moving party demonstrates both that "no genuine dispute as to any material fact" exists and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit under the state substantive law are considered "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-631 (9th Cir. 1987).

### B. Motions *in Limine*

The Federal Rules of Evidence generally govern diversity cases due to the procedural nature of evidentiary matters. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). The Court may issue *in limine* rulings pursuant to its inherent authority to manage the course of trials. *Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1984). A motion *in limine* serves to determine the relevance of anticipated evidence in advance of trial. *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). Motions and orders *in limine* save time at trial and protect the jury from being exposed to potentially prejudicial, inadmissible evidence. *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003).

Evidence is inadmissible if it is irrelevant. Fed. R. Evid. 402. Irrelevant evidence lacks "any tendency to make a fact more or less probable than it would be

without the evidence" or fails to be "of consequence in determining the action."
Fed. R. Evid. 401. Relevant evidence may be inadmissible if "its probative value is
substantially outweighed" by a risk of unfair prejudice, confusing the issues,
misleading the jury, undue delay, wasting time, or needlessly presenting
cumulative evidence. Fed. R. Evid. 403.

## IV.  DISCUSSION

Many of the parties' motions overlap by topic and will be addressed
accordingly herein.

### A. Whether the Negligence of Other Tortfeasors Caused or Contributed to Northbank's Alleged Damages?

Northbank has moved for summary judgment on EBC's seventh defense:
negligence of joint tortfeasors. EBC alleged in its First Amended Answer,
Affirmative Defenses, Counterclaim that the negligence of other tortfeasors caused
or contributed to Northbank's alleged damages. (Doc. 6 at 5-6.) Northbank argues
no genuine issue exists that any party other than EBC caused Northbank's tort
damages. (Doc. 26 at 10.) EBC does not contest this motion. (Doc. 37 at 7.) The
Court grants Northbank's motion for summary judgment on EBC's seventh
defense, negligence of joint tortfeasors.

### B. Whether Northbank Requested that EBC Perform Beyond the Scope of the Subcontract?

Several motions hinge on the general question of whether Northbank requested that EBC complete work above and beyond the scope of the Subcontract, as EBC alleges; or, if, as Northbank alleges, it simply asked EBC to complete the work it already had agreed to perform under the Subcontract. (Docs. 37 at 8-9; 39 at 9.) This general disagreement implicates: (1) both parties' motions for summary judgment on EBC's *quantum meruit* counterclaim; (2) Northbank's motion *in limine* to exclude any allegations by EBC that Northbank had or breached a duty to amend its contract with EBC to a time and materials basis; and (3) Northbank's motion *in limine* to limit EBC's damages for breach of contract.

### i. *Quantum* Meruit/Unjust Enrichment

The doctrine of unjust enrichment prevents one from benefiting from his or her "wrongful acts." *Estate of Pruyn v. Axmen Propane, Inc.*, 223 P.3d 845, 857 (Mont. 2009). Courts apply this doctrine most often when no contract exists between the parties, but a contract has been "implied." *Id. (See also Total Indus. Plant Servs., Inc. v. Turner Indus. Grp., LLC*, 294 P.3d 363, 368-369 (Mont. 2013).) The Montana Supreme Court has applied the doctrine of unjust enrichment, however, to cases where a contract exists, but the parties modified the contract either orally or via email. *See Lewistown Miller Construction Co. Inc. v. Martin*, 271 P.3d 48 (Mont. 2011).

EBC alleges that Northbank "directed EBC to procure tooling and to engage in drilling work beyond the scope of the Subcontract" and assured EBC that it would pay for the work. (Doc. 37 at 8-9.) EBC describes expenses including, "costs for stand-by, additional equipment and labor, per diem, rented hammers and tools, cement and calcium, and casing." (Doc. 33 at 5.)

Northbank argues that EBC knowingly and expressly agreed to conduct its work "full payment . . . not [to] exceed" the amended Subcontract price of $37,765.00. (Doc. 26 at 12.) Northbank argues that a written change order represents the only method for changes to the scope of work. (Doc. 40 at 3-4.) "Any work outside the scope of this contract performed without a Northbank written, executed change order will not be paid." (Subcontract, Doc. 1-1, art. VII, at 2). The parties entered into only one change order for a hammer and bit. (Doc. 40 at 4.) The amended Subcontract price reflects this change. *Id.*

Sufficient question of material fact exists to preclude summary judgment for both parties on the issue of *quantum meruit*/unjust enrichment. A reasonable jury could decide either that the work Northbank requested of EBC constituted additional work beyond the scope of the Subcontract, or that the requested work fell entirely within the scope of the Subcontract. The Court denies both parties' summary judgment motions on this topic.

### ii. Subcontract Amendment to Time and Materials Basis

Northbank argues the Subcontract contemplates no scenario "in which this payment method would be appropriate." (Doc. 28 at 9.) Northbank asserts that the parties had agreed that any changes to price under the Subcontract "will be through written change orders only" and the parties made no change orders allowing payment on a time and material basis. (Subcontract, Doc. 1-1, art. VII, at 3.)

Whether Northbank possessed a duty to change the contract or pay for allegedly additional work intertwines with the unjust enrichment issue. Factual questions persist surrounding the nature of Northbank's and EBC's discussions. Evidence on this topic is relevant to the case at this time, and, therefore, an *in limine* ruling would not be justified at this stage in the proceedings.

### iii. Limit Damages

Northbank has moved *in limine* to limit EBC's damages for breach of contract, if any, to the $28,795 amended contract price for work performed, or, in the alternative, to the $37,765 amended Subcontract price. EBC asserts that Northbank requested that EBC incur the expenses beyond the scope of the Subcontract and should be required to pay for those additional expenses. (Doc. 35 at 13.)

This issue again depends on the resolution of the question of whether Northbank requested that EBC perform work beyond the scope of the Subcontract. EBC's evidence on its expenses beyond the Subcontract price relate to this issue.

An *in limine* ruling would not be justified on this issue at this stage in the proceedings.

### A. Whether Northbank Breached the Subcontract by Failing to Pay EBC?

EBC argues in its statutory right to payment counterclaim that it performed pursuant to the Subcontract and is entitled to payment from Northbank. (Doc. 6 at 11.) EBC argues that the work that it completed on three pilings that Northbank accepted entitles it to receive payments and the costs associated with that work, under Mont. Code Ann. §§ 28–2–2100, *et. seq*., "the Prompt Payment Act." (Doc. 37 at 12.) EBC asserts that Northbank breached the Subcontract by failing to pay EBC for the work on the accepted piles. (Doc. 32 at 7.)

Northbank argues that the Prompt Payment Act does not apply here where the federal government owns the Project. (Doc. 26 at 14-15.) Northbank also argues that EBC's failure to complete satisfactorily all of the work required under the Subcontract constitutes a failure of a condition precedent. (Doc. 26 at 12-13.) This failure excuses Northbank from any obligation to pay for any work completed. *Id.*

Each party cites different provisions of the Subcontract to bolster its arguments. EBC argues that Northbank agreed "to pay the Subcontractor for the satisfactory performance of the Subcontractor's Work." (Doc. 32 at 7; Subcontract,

10

Doc. 1-1, art. VII, at 3.) EBC further argues that the contract does not require all of the work to be completed before payment, and that EBC should be entitled to progress payments "within (7) days of Contractor receiving payment from the Owner" for work completed on the project. (Doc. 32 at 8; Subcontract, Doc. 1-1, art. VIII(G)(2)(b), at 4.)

Northbank argues that the Subcontract entitles it to withhold any amounts due to EBC. (Doc. 42 at 15-16.) The Subcontract states that after a default and failure to cure by EBC, Northbank shall have the right to "withhold payment of any monies due [EBC] pending corrective action" and to "set-off Northbank's damages attributable to [EBC]'s default against all monies due [EBC]." (Subcontract, Doc. 1-1, art. XII(1)(c-d), at 7.)

Questions regarding the applicability of the Prompt Payment Act and the alleged competing provisions of the Subcontract render summary judgment inappropriate. These questions are best left to the jury to decide. The Court denies both parties' motions for summary judgment on this issue.

B. Whether the FHA Approved EBC's Drilling Method?

Northbank has moved for summary judgment on EBC's waiver defense, EBC's negligent misrepresentation counterclaim, and EBC's fraud counterclaim. Northbank also has filed a motion *in limine* to exclude evidence that Northbank allowed EBC on site without an approved drilling submittal.

EBC alleges that Northbank waived its right to pursue any damages in this case when it told EBC to proceed with its work knowing that EBC's proposed methods and equipment did not comply with project specifications and knowing that EBC's submittal had not been approved by the government. (Doc. 6 at 4.) EBC further alleges that Northbank negligently represented to EBC that EBC's drilling methods would be adequate and acceptable for the project. *Id.* at 10. EBC's fraud counterclaim alleges that Northbank made representations to EBC that its drilling method would be adequate and acceptable to the government knowing such representations were false. *Id.* at 10-11.

Northbank argues that EBC predicated each of these defenses/counterclaims on EBC's claim that "Northbank told EBC that its methods and equipment were approved by the FHA, despite knowing that the methods and equipment were unapproved and did not comply with the Project specifications." (Doc. 26 at 18.) Northbank argues that the FHA did approve EBC's equipment and methods before EBC began work on the Project. *Id.* at 19.

The argument between the two parties hinges on whether FHA actually approved EBC's proposed drilling methods when it approved a revised proposal. FHA notified Northbank on August 4, 2014, that it rejected EBC's proposed drilling method as submitted on August 1, 2014, because it failed to comply with the contract requirements. (Doc. 37 at 15.) EBC submitted a revised plan to

Northbank. *Id.* Northbank, in turn, submitted the revised plan to FHA. *Id.* FHA responded to Northbank: "The submittal is accepted with the following comments: As you are aware, we still have some concerns related to the proposed pile installation equipment and methods. . ." *Id.*

Northbank argues that FHA's response represents a clear approval of the drilling methods. (Doc. 40 at 13.) Northbank contends that "simply because the FHA retained a right to reject nonconforming work—that is, the right to identify breaches and seek a remedy—does not mean it rejected EBC's submittal." *Id.*

EBC argues that FHA's approval with comments, combined with a second letter from FHA to Northbank expressing concerns about EBC's ability to comply with the contract requirements after EBC began its pile installation, could lead a reasonable person to conclude that FHA had not approved the drilling methods (Doc. 37 at 15-16.)

The apparent ambiguity of the letters from FHA creates a material issue of fact that precludes summary judgment on this issue. Northbank's motion *in limine* to exclude evidence that Northbank allowed EBC on the Project site without an approved drilling submittal likewise proves inappropriate at this juncture. Whether Northbank allowed EBC on the Project site without an approve plan relates to EBC's possible defenses to Northbank's breach of contract claims.

    C. Should the Existence of Differing Site Conditions Excuse EBC's Default?

Northbank has moved for summary judgment on EBC's defense that alleges that differing site conditions caused Northbank's damages. EBC claims further that these differing site conditions discharged its duty to perform under the contract. (Doc. 6 at 6.) Northbank also has moved for summary judgment on EBC's defense that Northbank breached the Subcontract by failing to amend the contract to account for differing site conditions and by failing to give reasonable direction to EBC. Northbank has moved *in limine* to exclude any allegations or evidence that Northbank had a duty, or breached a duty, to pursue a changed circumstances or differing site conditions request with the FHA.

EBC claims that it encountered different site conditions than it expected once it began drilling. (Doc. 37 at 12.) These alleged changed conditions include over-sized rip rap, concrete, and timbers. *Id.* EBC argues that Northbank falsely led EBC to believe Northbank would work with EBC to pursue a changed conditions claim against FHA. *Id.*

Northbank argues that EBC agreed that it was "satisfied . . . as to the nature and location of the [Drilling Work], the general local conditions, and all matters which in any way affect the [Drilling Work.]" (Subcontract, Doc. 1-1, art. V(2), at 2-3.) Northbank alleges that EBC agreed under the Subcontract that it would take "full responsibility for prepar[ing] and present[ing]" a differing conditions claim to the FHA. (Doc. 26 at 16; Subcontract, Doc 1-1, art. IX.H.3, at 5.)  Northbank also

alleges that EBC agreed that it would be bound by the FHA's decision on the claim. *Id*. Northbank argues that it fulfilled any responsibilities on this issue when it transmitted EBC's claims to the FHA. *Id*.

Northbank argues that EBC failed to follow the agreed-upon procedure and never made a sufficient claim of changed circumstances to Northbank or the FHA. (Doc. 26 at 16.) EBC wrote to Northbank that: "[W]e have incurred unforeseen conditions at the [Project] site. . . . [W]e are willing to work with your firm through the change of conditions and not put in a 'stop work' notice at this time. However, due to differing site conditions, namely oversized rip-rap, concrete & timbers, our firm is forced into a change of conditions and proposes working at a time and material rate." (Letter from EBC to Northbank (Oct. 2, 2014), Doc. 25-8 at 1.).

Northbank asserts that EBC never stated that it wished to make a claim to alter the Prime Contract or the Subcontract. (Doc. 26 at 17.) Northbank alleges that EBC never provided any documentation or other materials to support any claim for differing site conditions. *Id.* Northbank further asserts that it transmitted EBC's deficient claim to the FHA that same day. *Id.* The FHA denied EBC's claim on the basis that "[t]he physical data provided at the time of bid indicated that the subsurface conditions encountered would be expected." (Letter from FHA to Northbank (Oct. 9, 2014), Doc. 25-12 at 1.) Northbank asserts that EBC elected not to appeal the FHA's denial or to present any additional claims. (Doc. 26 at 18.)

Sufficient contention on material facts exists here to preclude summary judgment on this issue. A jury should decide whether Northbank handled the changed condition issue properly under the contract. Likewise, a motion *in limine* excluding any allegations or evidence that Northbank had a duty, or breached a duty, to pursue a changed circumstances or differing site conditions request with the FHA, would be inappropriate where this evidence relates to understanding all of the factors that led to Northbank issuing EBC a notice to cure.

### D. Whether Northbank Breached the Subcontract by Failing to Provide a Drive Shoe?

Northbank also has moved *in limine* to exclude evidence that Northbank did not fit steel pipe piles with a cutting or drive shoe for use with EBC's rock auger drilling system. EBC has alleged that Northbank breached the Subcontract with EBC by "failing to provide the casing drive shoe necessary for the proper functioning of the drilling system; [and] failing to 'fit all steel pipe piles with a cutting shoe.'" (Doc. 21 at 12.)

Northbank argues that evidence of this alleged failure would be unfairly prejudicial, cause undue delay, and waste time. (Doc. 28 at 11.) Northbank points out that the rock auger drilling system EBC originally used and that was approved by the FHA did not call for and did not need a drive or cutting shoe. *Id.* at 10. EBC argues that evidence on this topic relates to its claim that Northbank directed EBC to change its drilling methods for the fifth pile. (Doc. 35 at 11-12.) Another

subcontractor provided an underreaming system that required a factory drive shoe. *Id.* at 12. The parties attempted to fashion a makeshift drive shoe but failed and the casing collapsed. *Id.* EBC then did not finish the pile and shortly afterward, Northbank issued its notice to cure to EBC. *Id.*

This evidence seems potentially relevant to explain what was happening on the ground at the time that Northbank decided to give EBC notice to cure. An *in limine* order would not be warranted at this time.

## V. ORDER

IT IS ORDERED:

1.     Northbank's motion for partial summary judgment on EBC's seventh defense, negligence of joint tortfeasors, is GRANTED and the defense is DISMISSED.

2.     EBC's motion for a summary judgment order ruling Northbank has been unjustly enriched by obtaining drilling services from EBC without paying for the services is DENIED.

3.     Northbank's motion for summary judgment on EBC's counterclaim V, q*uantum meruit* is DENIED.

4.     Northbank's motion *in limine* to exclude any allegations by EBC that Northbank had or breached a duty to amend its contract with EBC to a time and materials basis is DENIED.

5.      Northbank's motion *in limine* to limit EBC's damages for breach of contract, if any, to the $28,795 amended contract price for work performed, or, in the alternative, to the $37,765 amended Subcontract price is DENIED.

6.      Northbank's summary judgment motion on EBC's counterclaim VI, statutory right to payment, is DENIED.

7.      EBC's motion for a summary judgment order ruling that Northbank breached the contract by failing to pay EBC for mobilization, tooling, and drilling work is DENIED.

8.      Northbank's motion for summary judgment on EBC's third defense, waiver; EBC's counterclaim II, negligent misrepresentation; and EBC's counterclaim IV, fraud, is DENIED.

9.      Northbank's motion *in limine* to exclude evidence that Northbank allowed EBC on site without an approved drilling submittal is DENIED.

10.     Northbank's motion for summary judgment on EBC's ninth and tenth defenses is DENIED.

11.     Northbank's motion *in limine* to exclude any allegations or evidence that Northbank had or breached a duty to pursue a changed circumstances or differing site conditions request with the FHA is DENIED.

12.     Northbank's motion *in limine* to exclude evidence that Northbank did not fit steel pipe piles with a cutting or drive shoe for use with EBC's rock auger drilling system is DENIED.

DATED this 13th day of October, 2016.


Brian Morris
United States District Court Judge